UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LATRICIA KING,**

    **Plaintiff,**

    v.                                                Case No. 18-CV-2039

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Latricia King seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

King filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income alleging disability beginning on April 16, 2015. (Tr. 348.) King's applications were denied initially and upon reconsideration. (*Id.*) King filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on July 19, 2108. (Tr. 215–56.) King testified at the hearing, as did Joe Entwistle, a vocational expert. (Tr. 348.)

In a written decision issued July 31, 2018, the ALJ found that King had the severe impairments of migraines, PTSD, and a depressive disorder. (Tr. 351.) The ALJ further found that King did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 351–54.) The ALJ found that King had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: no climbing of ladders, ropes or scaffolds; no exposure to workplace hazards; occasional exposure to irritants such as fumes, odors, dusts, and gases; and only jobs where the noise level intensity does not exceed moderate as defined by the selected characteristics of occupations. King was further limited to simple, routine, repetitive tasks, and tasks that require no more than understanding, comprehending, and remembering simple instructions; only low stress work defined as jobs without inflexible or fast-paced production requirements; jobs involving only simple decision-making and no more than occasional changes in work setting; and only occasional interaction with supervisors, co-workers, and the public with no tandem tasks. (Tr. 354–57.)

The ALJ found King unable to perform her past relevant work; however, the ALJ found that considering King's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 357–58.) As such, the ALJ found that King was not disabled from her alleged onset date until the date of the decision. (Tr. 358.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied King's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

King alleges that the ALJ erred in the evaluation and accommodation of her migraines. First, she argues that the ALJ erred in rendering a decision without considering all of the available evidence. Second, she argues that the ALJ failed to properly account for her

photophobia in the RFC determination. Finally, King argues that the ALJ improperly discredited her allegations of disabling symptoms due to migraines. I will address the second alleged error first.

Although the ALJ did not find King's migraines disabling, he did find them to be a severe impairment and explained that he was providing limitations in King's RFC to account for her migraines. King testified that her migraines were the primary reason she could not work. (Tr. 232.) She stated that she had been suffering from migraines for a long time, but the migraines were getting worse. (*Id.*) King noted that she was wearing sunglasses at the hearing because "sun, any light, is unbearable." (*Id.*) She testified that after taking her migraine medications, she can engage in daily life while wearing sunglasses and that her sunglasses were "a part of [her] wardrobe . . . . [W]hen I go out, people are used to seeing me with sunglasses." (Tr. 235.) King also testified that her migraines were triggered by light, sound, and smell. (Tr. 236.) King testified that "normal light" triggers her migraines, so she has to dim her phone and computer to use them. (Tr. 243.)

The record confirms that King's migraine triggers include stress, light, sound, and odors and that she experienced photophobia and phonophobia associated with her migraines. (Tr. 20, 44, 48, 63, 701, 713–14, 730, 737, 781.) Although the ALJ states that there are no record observations of King wearing sunglasses (Tr. 357), in May 2017, Dr. Richard Ertl noted while conducting a mental status examination that King was sensitive to light and sound (Tr. 683) and that she had "sunglasses perched on her head" (Tr. 684). Further, a physician's assistant in February 2018 noted that King was wearing sunglasses and experienced photophobia after removing them. (Tr. 63, 714, 781.)

4

Even though the ALJ apparently missed this supporting evidence, he credited King's testimony regarding her migraine triggers including stress, light, certain odors, and noise. (Tr. 356.) The ALJ explained that "[t]he last treatment note of record dated May 16, 2018, indicates the claimant reported daily headaches that are triggered by stress, light, and certain odors, which the residual functional capacity accommodates . . . ." (*Id.*) The RFC does indeed limit King to low stress work, with only occasional exposure to fumes and odors, and to jobs where the noise level intensity does not exceed moderate. (Tr. 354.) However, despite explicitly stating that he *is* accounting for it, the ALJ does not account for King's sensitivity to light. Even if the ALJ did not believe that King needed to wear her sunglasses all of the time, it is unclear how the RFC accounts for this limitation at all. (Tr. 356.) The Commissioner tries to bypass this error by arguing that no doctor's opinion specifically articulated limitations for King's photophobia. (Def.'s Br. at 7, Docket # 15.) That may be, but the ALJ clearly credited King's testimony regarding her photophobia nonetheless, and specifically stated that her "headaches . . . are triggered by . . . light . . ., which the residual functional capacity accommodates . . .," (Tr. 356), but then failed to actually accommodate her sensitivity to light in the RFC and corresponding hypothetical to the VE (Tr. 252–53). This is error and requires remand.

Given that the case is being remanded, I will only briefly address King's two other alleged errors. Again, she argues that the ALJ erred in assessing her credibility regarding the severity of her migraine symptoms. King challenges three of the ALJ's stated reasons: (1) King experienced migraines for the past eighteen years and yet was able to work at a level well above substantial gainful activity during this time period (Tr. 355–56), (2) King worked several part-time jobs in 2016 and 2017 despite experiencing an exacerbation of her migraine

5

symptoms (Tr. 356), and (3) King underwent mainly conservative treatment (Tr. 357). King argues the ALJ failed to account for the fact that her headaches worsened over the years, that even while working part-time she struggled to tolerate work conditions and maintain attendance due to her migraines, and over the years she switched medications and sought more aggressive treatment for her symptoms. (Pl.'s Br. at 20–31, Docket # 11.)

Contrary to King's assertions, the ALJ did consider the fact that King experienced an exacerbation in headache symptoms in April 2017 and again in February 2018. (Tr. 356.) And while King acknowledges in her reply brief that her stated treatment (i.e., painkillers and injections) are indeed considered "conservative" methods of treatment (Pl.'s Reply Br. at 6–7, Docket # 16), she argues the ALJ still should have considered the fact that even within conservative treatment "there are levels as to how aggressive treatment is." She argues the ALJ erred by not examining how her conservative treatment became more aggressive over time. (*Id.* at 7.) But King fails to point to any specific evidence in support of this alleged error, nor does she explain how the treatment became more aggressive.

However, the ALJ should reassess his reliance on King's ability to perform part-time work on remand. While the fact that a claimant can work part-time is relevant to her credibility, *see Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that [claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."), the ALJ does not seem to consider the limitations King's migraines placed on her performance of these part-time jobs. For example, King testified that she worked in a warehouse part-time and was wearing her sunglasses instead of the protective glasses she was required to wear. (Tr. 226.) King testified that the factory manager told her to put her protective glasses back on, and she

6

subsequently had a "migraine attack" where she began sweating profusely and saw a bolt of light. (*Id.*) She was asked not to return to work because she was a "liability." (Tr. 227.) She also was terminated from her part-time job at a grocery store because she was frequently calling in sick due to migraines. (Tr. 713.) In other words, the fact that King worked part-time needs to be viewed in its full context when the ALJ determines credibility.

Finally, King's argument that the ALJ did not consider the whole record is without merit. During the administrative hearing on July 19, 2018, King's counsel noted that King had additional medical records related to an endocrinology clinic visit for a gland issue that she attended the previous week. (Tr. 218–19.) Counsel stated that King's treating physician was trying to determine whether the gland issue was related to her migraines. (Tr. 219, 255.) Counsel requested the ALJ hold open the record to obtain these treatment notes, and the ALJ gave counsel fourteen days, or until August 2, 2018, to submit the additional records. (*Id.*) The ALJ issued his decision, however, on July 31, 2018. (Tr. 359.) Thus, the ALJ did not hold the record open for the entire fourteen days, although the ALJ stated that he had received and admitted the endocrinology evidence into the record. (Tr. 348.)

King argues that the ALJ could not have considered certain additional evidence because it had not been submitted by the time the ALJ made the decision. (Pl.'s Br. at 18.) However, King does not argue that the ALJ's failure to consider the *endocrinology* records would have altered the ALJ's decision. Rather, King argues that the ALJ failed to consider two emergency room visits from December 2017 and February 2018. (Pl.'s Reply Br. at 3.) These are undoubtedly not the treatment notes that the ALJ agreed to hold the record open for submission. At the close of the hearing, the ALJ reiterated that he was "also going to wait for the update from the recent appointment that you had," before rendering his decision. (Tr.

7

255.) King offers no reason why she could not have provided these other records prior to the hearing or any reason to believe the ALJ knew he should wait for them. If the ALJ understood that he was holding the record open just for these recent endocrinology records, why would he have thought he needed to wait the entire fourteen days for King to submit further, unanticipated records? Thus, I do not find the ALJ erred in this regard.

## CONCLUSION

Although the ALJ specifically credited King's assertion that her migraines were triggered by light and stated that he was accounting for this trigger in her RFC, the ALJ failed to do so. Thus, remand is required.

Although King requests that this Court award her benefits in lieu of remanding the case, an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of December, 2019.

>BY THE COURT
>
>*s/Nancy Joseph*
>NANCY JOSEPH
>United States Magistrate Judge